# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WENDELL K. BROWN,<br>Plaintiff | CIVIL NO. 3:-09-CV-0933 |
| v. | (Judge Munley) |
| KEVIN DEPARLOS, et al.,<br>Defendants | |

## MEMORANDUM

Plaintiff Wendell K. Brown ("Brown") initiated this action on May 18, 2009, naming as defendants numerous medical and prison personnel employed at the Lycoming County Prison, Williamsport, Pennsylvania. (Doc. 1.) Brown pursues constitutional claims pursuant to 42 U.S.C. § 1983, an Americans with Disabilities Act claim under 42 U.S.C. § 12132, and state law medical malpractice claims. Presently pending are three separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, motions were filed on behalf of William Keenan, M.D. ("Keenan") and Elizabeth Anderson M.D. ("Anderson") (Doc. 25), the Lycoming County Prison employees[1] (Doc. 26), and Terri Calvert, M.D ("Calvert").[2] (Doc. 28). For the reasons set forth below, the motions filed on

---

[1] The Lycoming Prison employees include the following individuals: Kevin Deparlos ("Deparlos"); Steve Blank ("Blank"); Sgt. Miller; Guards J. Miller, R. Barnes ("Barnes"), R. Kuhns ("Kuhns"), P. Keeler ("Keeler"), T. Stutzman ("Stutzman"), Bowes, Kirkendall ("Kirkendall"), R.M. Miller, Romano (Romano); Release officer C. Ebner ("Ebner"); Lt. Harley ("Hartley"); and nurses Kim Poorman ("Poorman"), Kathy, Judy, Darlene, and Tammy.

[2] Plaintiff erroneously identified this defendant as "Calbert." (Doc. 1, at 4.)

behalf of Keenan and Anderson (Doc. 25) and the Lycoming County Prison employees (Doc. 26), will be granted in part and denied in part. Defendant Calvert's motion (Doc. 28) will be granted.

Also pending is Brown's motion to supplement the complaint (Doc. 84), which will be denied without prejudice.

I. **Allegations of the Complaint**

On March 16, 2008, Brown was treated at a Williamsport Hospital Emergency Room for neck and back pain and stab wounds resulting from a fight. (Doc. 1, at 7, ¶ 1.) He was prescribed Percocet, for pain. Upon being discharged from the hospital, he was arrested and transported to the Lycoming County Prison ("LCP"). During his intake evaluation at LCP, he alleges that defendants Poorman, Kathy, Judy and Darlene discontinued his Percocet and prescribed him Tylenol 500 mg for his pain. (Id. at ¶ 2.) He states that he never saw a doctor. (Id.) In addition, his Valium was discontinued without consulting a psychiatrist. He alleges that this was in accordance with the policies and procedures of LCP, sanctioned by defendants Warden Deparlos, Deputy Warden Blank, Dr. Keenan, Dr. Calvert, Dr. Anderson, and Nurse Supervisor Poorman, by which inmates, upon arrival and during incarceration at LCP are denied access to doctors. (Doc. 1, at 7, ¶ 3.)

He further alleges that throughout the remainder of March 2008, and continuing into April 2008, defendants Poorman, Judy, Kathy, and Darlene, denied him access to a medical doctor and refused to provide him any treatment for the pain in his neck after the Tylenol 500

2

mg prescription expired. (Doc. 1, at 8, ¶ 5.) On one occasion, he suffered a severe neck spasm and the nurses failed to provide him with any medical treatment. (Id.) "Six hours into the spasm attack the plaintiff Brown was finally seen by defendant Dr. Anderson who only used the plaintiff as a prop for the intern with her, as defendant Anderson would violently twist the plaintiff's Brown's head back up against the direction that the spasm would force his head to face. The plaintiff Brown felt a crack and a pop in his neck and shoulders." (Doc. 1, at 8-9, ¶ 6.) Anderson also prescribed muscle relaxers and Tylenol. (Id.) Thereafter, his condition went "downhill" to the point where he was prescribed a sling for his left arm and a brace for his neck, and scheduled for an Magnetic Resonance Imaging("MRI") scan. (Doc. 1, at 8, ¶ 7.)

In May 2008, defendant Keenan informed Brown that he was suffering from a ruptured disc and a bulging disc causing a serious nerve compression within his spinal cord. (Id. at ¶ 8.) He was prescribed Vicodin and Neurontin for pain and was scheduled to see the neurosurgeon. (Id. at 8-9, ¶ 8.) Two weeks later, he saw the neurosurgeon, who agreed to operate. The surgery took place on June 12, 2008. (Id. at 10, ¶ 9.) He alleges that upon returning from surgery, he was placed in 24 hour lock-up in the SMU and then on K Block with 24-hour lock-up with a racist wheelchair patient. (Id.) He alleges that Brown and other inmates with broken arms and injuries were placed on 24 hour lock-up or on other restrictions. (Id. at ¶ 10.)

He was released from LCP on November 16, 2008, for medical reasons. (Doc. 1, at

3

11, ¶ 11.) However, on January 17, 2009, he returned to LCP and, again, was denied all prescribed medications by defendants Poorman, Kathy, Judy, Darlene, and Tammy. (Id.) In addition, they denied Brown access to a doctor until he started to suffer from spasms again. He avers that these same defendants also denied him psycho tropic medication and access to a psychiatrist. (Id. at 11, ¶ 12.) He states that this is as a result of the conduct and procedures of LCP sanctioned by defendants Deparlos, Blank, and Calvert.

On April 13, 2009, he alleges that he was verbally harassed by defendants Miller and Kuhns, and that such conduct was sanctioned by defendants Deparlos and Blank. In addition, defendants Kuhns, Bowes, and Kirkendall failed to intervene in an incident in which Brown was verbally assaulted and physically chest bumped. (Doc. 1, at 12, ¶ 15.) He further states that defendant Kuhns joined forces with defendants Sgt. Miller, J. Miller, Barnes, Keller, Stutzman, and nurse Tammy to deny him medical care and to write false misconducts. (Id. at ¶ 16.) In addition, defendants Blank, Ebner, and Hartley tried to "scare the plaintiff away form seeking medical care." (Id.)

He alleges that the above conduct violated his Eighth and Fourteenth Amendment rights, violated the Americans with Disabilities Act and constituted medical malpractice in violation of the laws of Pennsylvania.

II. **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P.

4

12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8 requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken

as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III. Discussion

### A. Constitutional Claims

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."

6

West v. Atkins, 487 U.S. 42, 48 (1988).

Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); see Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Such allegations, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08. Further, the United States Court of Appeals for the Third Circuit requires a defendant's contemporaneous, personal knowledge and acquiescence, in order to establish personal knowledge. Id. Liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo, 423 U.S. 362; Rode, 845 F.2d at 1207. To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

   1.   Denial of Medical Care

It appears that at some point during his incarceration, Brown may have been a pretrial detainee. If that is the case, his constitutional claims are considered under the due process clause of the Fourteenth Amendments, rather than the Eighth Amendment. See City of

7

Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005). However, the Third Circuit has held that the "deliberate indifference" standard employed in Eighth Amendment cases also applies to pretrial detainees under the Fourteenth Amendment. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003) (recognizing that "In previous cases, we have found no reason to apply a different standard than that set forth in Estelle . . . We therefore evaluate Natale's Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims under the Eighth Amendment."). Accordingly, since the Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment, the Court will apply the deliberate indifference standard of the Eighth Amendment in analyzing Brown's denial of medical care claim. See Simmons v. City of Philadelphia, 947 F.2d 1042, 1067 (3d Cir. 1991) (finding that the rights of a detainee are at least as great as those of a convicted prisoner).

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, as is alleged here, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: First, a plaintiff must make an

"objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). In this context, deliberate indifference has been defined as more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference, and "mere disagreements over medical judgment do not state Eighth Amendment claims." White, 897 F.2d at 110. "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown

9

to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Brown alleges that defendant Keenan informed him of his MRI results and discussed the option of surgery with him. In addition, Keenan prescribed pain medication for Brown and set up an appointment with the neurosurgeon. Such allegations do not reveal any constitutional misconduct on the part of defendant Keenan. The motion to dismiss will be granted on his behalf. Conversely, Brown avers that while experiencing a muscle spasm, defendant Anderson "violently" twisted his head, causing a crack and a pop in his neck and shoulders, which led to a rapid deterioration of his health. This is sufficient to state a claim of deliberate indifference to plaintiff's medical condition. The portion of the motion seeking to dismiss the denial of adequate medical care claim will be denied as to this defendant.

Brown further alleges that defendants Poorman, Kathy, Judy, Darlene and Tammy denied him his prescribed medications and access to a doctor, which led to serious nerve damage to his arms and hands, and damage to his spinal cord. These allegations are sufficient to state a claim of deliberate indifference to plaintiff's medical condition.

Brown fails to allege that Calvert was personally involved in any of the wrongdoing described in the complaint. Rather, he is seeking to impose liability based solely on her supervisory position. As noted above, to maintain a claim for supervisory liability, Brown must show that Calvert personally participated in the activity, directed others to violate his rights, or had knowledge of and acquiesced in a subordinate's violations. He concedes that

Dr. Calvert "did not deny the plaintiff any treatment as stated via complaint" and that she is "named as a defendant do [sic] to her supervisory role in allowing other to decide[] who she sees for treatment." (Doc. 39, at 3-4.) Such allegations are insufficient. Accordingly, Calvert's motion to dismiss the constitutional claims against her will be granted.

Brown fares no better in attempting to hold defendants' Blank and Deparlos liable for the alleged inadequate medical care. A non-physician defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff. See Durmer, 991 F.2d at 69.

    2.    Conspiracy

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 432 n.8 (3d Cir. 1990). See also, Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators

11

reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. See id.; Rose, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16.

Viewing the complaint in the light most favorable to Brown, he has nevertheless failed to state a viable conspiracy claim against defendants. His allegations are conclusory, and do not meet the requirement that a civil rights conspiracy claim contain specific facts that tend to show a meeting of the minds and concerted activity. The general allegations that defendants Sgt. Miller, J. Miller, Barnes, Kuhns, Keeler, Stutzman, Romano, and Nurse Tammy, worked in concert to deny him medical care are insufficient to state a conspiracy. Likewise, his allegations that defendants Kuhns, Bowes, and Kirkendall conspired to deny him medical care and to write false misconducts are insufficient to state a conspiracy claim. All conspiracy claims are subject to dismissal.

    3.    <u>Harassment</u>

Allegations of verbal assault do not rise to the level of a constitutional violation. Mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979) (finding verbal

harassment in the form of threatening to hang an inmate is insufficient to state a constitutional deprivation under § 1983). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir.1979) (stating that defendant laughed at prisoner and threatened to hang him).

Brown's claims of verbal assault and harassment, lodged against defendants R.M. Miller and Kuhns, are not cognizable under § 1983. Nor is his claim that defendants Blank, Ebner, and Hartley "tried to scare the plaintiff away from seeking medical care." (Doc. 1, at 12, ¶ 16.) Such claims are subject to dismissal.

### B. ADA Claim

Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. §

13

24102(4) ] )." 42 U.S.C. § 12131(a). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998). However, the plain language of § 12132 applies only to public entities not individuals. Yeskey v. Commonwealth, 76 F. Supp. 2d 572, 575 (M.D.Pa. 1999) (holding that individuals are not liable under Title II because it prohibits discrimination in programs of a "public entity" or discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals). None of the moving defendants qualify as a public entity. Therefore, the ADA is inapplicable and this claim will be dismissed.

C. **State Law Claim**

The court declines to exercise supplemental jurisdiction over the pendent state law medical malpractice claims. 28 U.S.C. § 1367(c)(3). They will be dismissed without prejudice to any right plaintiff may have to pursue them in state court. In so holding, the court expresses no opinion as to the merits of any such claims.

Even if the court were to exercise jurisdiction, the claims would be subject to dismissal due to Brown's failure to file a certificate of merit as required by Pennsylvania Rules of Civil Procedure 1042.3. Rule 1042.3 requires an "attorney for the plaintiff, or the plaintiff if not represented" who brings an action based on "an allegation that a licensed professional deviated from an acceptable professional standard" to file a certificate of merit within sixty days of the filing of the complaint. The certificate must attest to the colorable

14

merit of the claim by including one of the following statements: (1) that "an appropriate licensed professional" has supplied a written statement that there is a reasonable probability that the defendant's conduct fell outside acceptable professional standards; (2) that the claim against the defendant is based solely on allegations against other professionals for whom the defendant is responsible; or (3) that expert testimony is unnecessary for prosecution of the claim. PA. R. CIV. P. 1042.3(a). The rule allows for a sixty-day extension of the period for filing a certificate of merit for "good cause shown." PA. R. CIV. P. 1042.3(d).

Rule 1042.3 is a substantive state law that federal district courts must apply. Cf. Chamberlain v. Giampapa, 210 F.3d 154, 158-61 (3d Cir.2000) (holding that a New Jersey statute similar to Rule 1042.3 should be applied as a substantive state law under the choice of law doctrine from Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)); Bresnahan v. Schenker, 498 F. Supp.2d 758, 762 (E.D.Pa.2007) (noting that Rule 1042.3 "has been repeatedly held to be controlling substantive law" under the Erie doctrine). By its explicit terms, the rule applies to both represented plaintiffs and pro se plaintiffs, like Brown. However, the failure to comply with Rule 1042.3 is not fatal to claims of professional liability if the plaintiff can show a "reasonable excuse" for the noncompliance. Womer v. Hilliker, 589 Pa. 256, 908 A.2d 269, 279-80 (2006). In the present case, Brown neither filed a certificate of merit nor requested an extension of time to do so. Nor did he present any excuse, much less a reasonable excuse for failing to do so.

15

IV. **Motion to Supplement Complaint**

Brown moves to supplement his complaint to include additional allegations against certain named defendants. The motion will be denied without prejudice to plaintiff's right to renew the motion as it relates to the remaining defendants, if he deems it necessary.

V. **Conclusion**

Based on the foregoing, the motions to dismiss filed on behalf of defendants Keenan and Anderson (Doc. 25) and Lycoming County Prison Employees (Doc. 26), will be granted in part and denied in part. Defendant Calvert's motion (Doc. 28) will be granted in its entirety.

In summary, the only remaining claim is Brown's claim that defendants Anderson, and nurses Poorman, Kathy, Judy, Darlene, and Tammy denied him adequate medical care. Brown's motion to supplement the complaint will be denied without prejudice to his right to renew the motion as it relates to defendants Anderson, and nurses Poorman, Kathy, Judy, Darlene, and Tammy.

An appropriate order will issue.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court

Dated: March 9, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WENDELL K. BROWN, : CIVIL NO. 3:-09-CV-0933
        Plaintiff :
: (Judge Munley)
v. :
:
KEVIN DEPARLOS, et al., :
        Defendants :

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

AND NOW, to wit, this 19th day of March 2010, upon consideration of defendants' motions to dismiss (Docs. 25, 26, 28) plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in accordance with the foregoing memorandum, it is hereby

**ORDERED** that:

1. The motion filed on behalf of defendants Keenan and Anderson (Doc. 25) is granted in part and denied in part. The motion is GRANTED in its entirety as to defendant Keenan. The Clerk of Court shall TERMINATE this defendant. The motion is GRANTED with respect to the ADA and state law claims against defendant Anderson. The motion is DENIED with respect to the denial of adequate medical care claim against defendant Anderson. Defendant Anderson shall file an answer or other appropriate pretrial motion with respect to the remaining claim on or before April 9, 2010.

2. The motion filed on behalf of the Lycoming County Prison employees (Doc. 26), is GRANTED in part and DENIED in part. The motions is GRANTED in its entirety with respect to defendants Blank, Deparlos, Sgt. Miller, J. Miller Barnes, Kuhns, Keeler, Stutzman, Bowes, Kirkendall, R. Miller, Romano, Ebner, Hartley. The Clerk of Court is directed to TERMINATE these individuals as defendants. The motion is GRANTED with respect to the ADA and state law claims against defendants Poorman, Kathy, Judy, Darlene and Tammy. The motion is DENIED with respect to the denial of adequate medical care claim against these defendants. These defendants shall file an answer or

other appropriate pretrial motion with respect to the remaining claim on or before April 9, 2010.

3. The motion filed on behalf of defendant Calvert (Doc. 28) is GRANTED in its entirety. The Clerk of Court is directed to TERMINATE this defendant.

4. Plaintiff's motion to supplement the complaint (Doc. 84) is DENIED without prejudice to his right to renew the motion, as it relates to the remaining defendants, if he deems it necessary.

5. The pre-trial schedule in the above-captioned case shall be as follows:

   a. Discovery shall be completed on or before May 21, 2010.

   b. Dispositive motions shall be filed on or before June 11, 2010.

   c. Scheduling of a final pre-trial conference and the trial date of this matter is deferred pending disposition of dispositive motions.

6. Any motions or briefs filed after the expiration of the applicable deadline without prior leave of court shall be stricken from the record.

7. No extensions of the pre-trial schedule shall be granted absent good cause. See FED. R. CIV. P. 16(b).

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court