# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WENDELL K. BROWN,** | : | **CIVIL NO. 3:-09-CV-0933** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **KEVIN DEPARLOS, et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Wendell K. Brown ("Brown") initiated this action on May 18, 2009. (Doc. 1.) Presently pending are motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 on behalf of Elizabeth Anderson, M.D. ("Anderson") (Doc. 101), and nurses Kim Poorman ("Poorman"), Cathy, Judy, Darlene and Tammy (Doc. 104).[1]

Defendant Anderson's motion is fully briefed and ripe for disposition and, for the reasons set forth below, will be granted. However, the motion filed on behalf of nurses Poorman, Cathy, Judy, Darlene and Tammy will be deemed withdrawn based on defendants' failure to file a supporting brief in accordance with Local Rule of Court 7.5, requiring a supporting brief be filed within fourteen days of the filing of a motion, and defendants' failure to properly support assertions of fact made in the statement of undisputed facts as required by Federal Rule of Civil Procedure 56 (e). (Doc. 104-2.) The withdrawal will be

---

[1] The Court previously disposed of three separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The only remaining claim is a 42 U.S.C. § 1983 civil rights claim that defendants Anderson, and nurses Kim Poorman, Cathy, Judy, Darlene and Tammy denied Brown adequate medical care in violation of the Eighth Amendment.

without prejudice to re-submit the motion accompanied by the proper supporting materials.

**I.     Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, the movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[2] In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Colwell v. Rite-Aid Corp., 602 F.3d 495, 501 (3d Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

---

[2] Rule 56 was revised by amendment effective December 1, 2010. The revisions are "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts." Rule 56 advisory committee notes. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Id. The post-2010 Amendment Rule 56 provisions will be applied in the matter *sub judice*, as the Supreme Court has directed that the 2010 Amendments are to be retroactively applied. See Order of the Supreme Court of the United States accompanying Letters from Chief Justice John G. Roberts, Jr., to Speaker of the House Nancy Pelosi and President of the Senate Joseph R. Biden, Jr. (Apr. 28, 2010).

**II.     Statement of Facts**

With the above standard of review in mind, the following are the facts material to Anderson's motion for summary judgment.

On March 16, 2008, Brown was treated at a Williamsport hospital emergency room for injuries he received as a result of being in a fight. (Doc. 102, ¶ 1.) Upon being discharged from the hospital, he was arrested and transported to the Lycoming County Prison ("LCP"). (Id. at ¶ 2.) It was noted in his medical records that upon incarceration he had two prescriptions bottles on his person. One was from a Medicine Shoppe pharmacy for Valium 5mg, three times a day filled on March 4, 2008, for ninety pills, which was empty. The second bottle for sixty pills of Valium 5mg to be taken every twelve hours was filled on March 15, 2008, at a Rite Aid pharmacy and there were thirty-six tablets missing on the LCP intake date of March 16, 2008. (Id. at ¶ 3.) It was also noted in the medical records that he had a history of Valium use. (Id. at ¶ 5.) During his intake evaluation, Brown advised one of the prison nurses that he suffered from a spinal cord injury and needed a walker. (Id. at ¶ 4.)

Defendant Anderson is currently licensed to practice medicine in the Commonwealth of Pennsylvania, and was so licensed at all times material to Brown's complaint. (Id. at ¶ 8.) She is employed by Susquehanna Physicians Services and occasionally provides medical care and treatment to inmates at LCP. (Id. at ¶¶ 9-10.) In that capacity, Anderson provided medical services to Brown during his incarceration at LCP from 2008 through 2010. (Id. at 11.)

In his affidavit, Brown represents that he "began to suffer from a powerful neck spasm

on April 3, 2008, while being denied [his] prescribed medications from outside doctors for pain and spasms." (Doc. 108, ¶ 2.) On that same date, he sought medical attention and reported that for three weeks he had been suffering from left neck back/shoulder pain with pain radiating down his left arm and into his spine, causing his legs to spasm. (Id. at ¶¶ 12-14.) Brown's head was turned to the left and he was holding his left arm in a sling-hold position to relieve pain. (Id. at ¶ 16.) Anderson conducted a physical examination in the presence of a medical student and a nurse and concluded that he was suffering with left neck/shoulder pain - muscle spasm. (Id. at ¶ 18.) She asked Brown to turn his head to the right, left, and up and down and she palpitated his neck to see if it was tender or if there were any discernable fractures. (Id. at ¶¶ 15, 23.) His neck range of motion was limited due to pain and he was unable to turn his head past midline to the right. (Id. at 17.) Anderson also palpitated the plaintiff's muscles to check for spasm and checked for muscle strength. (Id. at ¶ 24.) His muscle strength was at plus 4, which is slightly below normal, his deep tendon reflexes were intact and he had no sensory deficit. (Id. at ¶ 16.) He was diagnosed with left neck/shoulder pain - muscle spasm and prescribed 10 mg of Flexoril three times a day for two weeks to control the muscle spasms and 1000 mg of Tylenol three times a day for two weeks for pain. (Id. at ¶¶ 18-19.)

According to defendant Anderson, the manner in which she palpitated Brown's neck was and is consistent with accepted medical practices for examination and treatment of neck/shoulder muscle spasms. (Id. at ¶ 25.) Turning a patient's head toward the direction of a spasm is known as manipulation and involves, in part, using high velocity low amplitude

4

thrusts which stretch the stiff part of the spine and it is often accompanied by a series of "clicks" or "pops." (Id. at ¶¶ 26-27.) These manipulations frequently result in a rapid reduction of muscle spasm and pain accompanied by a noticeable increase in the range of spinal movement. (Id. at ¶ 28.) Further, manipulation is within the standard of care and is a well-known means of treating a neck spasm and it is used by many physicians, chiropractors, and physical therapists. (Id. at ¶ 27.) Defendant Anderson states that she did not seek to intentionally cause plaintiff pain either by palpitation of his neck or otherwise. (Id. at ¶ 29.)

On April 5, 2008, he sent a request to the medical department for Valium and Percocet for pain. (Doc. 103, at p. 33.) He was given Tylenol and Flexoril. (Id.) He wrote a second request on April 5, 2008, in which he requested a doctor's visit and a neck brace. (Id.) On April 8, 2008, he wrote a request in which he sought medical attention because he was unable to sleep due to pain and numbness in his fingers, and complained that he was being denied medication and proper care. (Id.) On April 10, 2008, Anderson reviewed Brown's request slips for medical treatment. (Doc. 102, ¶ 31.) In response to Brown's ongoing complaints of pain and numbness, Anderson prescribed a cervical collar and added a prescription for Neurontin, 100mg three times a day and 50mg of Ultram three times a day as needed for pain. (Id. at ¶ 31.)

On April 21, 2008, Brown complained that he had been suffering from arm numbness since his visit to the emergency room on March 16, 2008, and there was a concern about cervical neuropathy. (Doc. 103, at p. 34.) It was therefore determined that Brown should

5

have a Magnetic Resonance Imaging("MRI") scan. (Id., at 35.) The following day, prison medical staff scheduled an MRI. (Id.) On April 25, 2008, the MRI was conducted of the plaintiff's cervical spine which showed a left sided C5-C6 disc herniation, C6 nerve compression and C6 disc bulging. (Doc. 102, at ¶ 32.)

On June 3, 2008, he was examined by neurosurgeon Dr. Rodwan Rajjoub for complaints of cervical, bilateral shoulders, and left arm pain . (Id. at ¶ 33.) Dr. Rajjoub detailed Brown's history as follows:

> Mr. Wendell Brown is a 41 year old African American male, right handed. Complains of pain in cervical spine, bilateral shoulders and left arm radiating to the fingers. Has numbness and tingling in left arm and hand. He reports that this began approx. 12 weeks ago after he developed spasms in his neck. He reports being hit in the head. It is painful to sneeze and/or cough. The pain is worse with laying down. He is wearing a splint on his left arm and cervical collar. Has increased pain with ROM of neck. He has previous history of low back pain but no surgery performed.

(Doc. 103, at p. 77.) After an examination, Dr. Rajjoub concluded that because Brown had not responded to conservative treatment, surgery was recommended. (Doc. 102, ¶ 37.) On June 12, 2008, Brown underwent an anterior cervical diskectomy of C5 disc with inter body allograft bone fusion and anterior arthodesis C5-C6 utilizing trabecular metal TM 100 cervical spacer. (Id. at ¶ 38.) Follow up care provided by Dr. Rajjoub on July 22, 2008, indicated that the plaintiff's spine was in good alignment after the surgery and the post operative cervical diskectomy with fusion at C5-C6 was going well. (Id. at ¶ 39.)

**III.   Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of

action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

It appears that at some point during his incarceration, Brown may have been a pretrial detainee. If that is the case, his constitutional claims are considered under the due process clause of the Fourteenth Amendments, rather than the Eighth Amendment. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005). Despite this distinction, the United States Court of Appeals for the Third Circuit has held that the "deliberate indifference" standard employed in Eighth Amendment cases also applies to

pretrial detainees under the Fourteenth Amendment. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003) (recognizing that "In previous cases, we have found no reason to apply a different standard than that set forth in Estelle . . . We therefore evaluate Natale's Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims under the Eighth Amendment."). Accordingly, since the Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment, the Court will apply the deliberate indifference standard of the Eighth Amendment in analyzing Brown's denial of medical care claim. See Simmons v. City of Philadelphia, 947 F.2d 1042, 1067 (3d Cir. 1991) (finding that the rights of a detainee are at least as great as those of a convicted prisoner).

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, as is alleged here, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). In this context, deliberate indifference has been defined as more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a

known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987).

Significantly, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference, and "mere disagreements over medical judgment do not state Eighth Amendment claims." White, 897 F.2d at 110. "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Based upon the evidence of record, Brown clearly suffered from a serious medical condition. However, Brown fails to come forward with any evidence that defendant Anderson was deliberately indifferent to his condition. Rather, the evidence demonstrates that he was simply dissatisfied with the medical care he received.

9

Brown was initially seen by Anderson on April 3, 2008, the very day that he began to suffer from a "powerful neck spasm." (Doc. 108, ¶ 2.) He reported that he had been suffering from spasms for approximately three weeks. Anderson thoroughly evaluated him in the presence of a nurse and medical student and concluded that he was, in fact, suffering from left neck/shoulder pain and muscle spasms. Brown complains that Anderson violently twisted his neck and he felt a crack and a pop. The record demonstrates that Anderson palpitated his neck and manipulated his head toward the direction of the spasm using high velocity low amplitude thrusts stretching the stiff part of the spine. According to Anderson, this technique is often accompanied by a series of clicks or pops. Anderson also represents that this is a common treatment for spasms that is utilized by many physicians, chiropractors, and physical therapists and Brown does not dispute this with any competent evidence. Thereafter, he was prescribed a two-week regimen of muscle relaxers and pain medication.

Over the course of the next week, Brown sent several request slips complaining of pain and numbness and requesting Valium and Percocet. On April 10, 2008, Anderson reviewed the request slips and prescribed a cervical collar and additional prescription pain/spasm medications; not Valium or Percocet. On April 21, 2008, Brown informed a physician's assistant that he had been suffering from numbness since his emergency room visit on March 16, 2008. This raised concerns that he was suffering from cervical neuropathy and prompted the physician's assistant to order an MRI. Four days later, an MRI was conducted which revealed disc herniation, disc bulging and nerve compression. Brown was then scheduled to see a neurosurgeon on June 3, 2008, who recommended that surgery

be performed because conservative treatment was not successful. Nine days later, he underwent surgery, which, according to the notes from his follow-up visit in July 2008, was a success.

It is evident from the above that Brown received more than adequate medical care. Every medical complaint was met by swift and steady action by Anderson and other medical personnel. He was provided with pain and spasm medications (albeit not Valium and Percocet, the medications of his choice), he was given a cervical collar and sling to help reduce his discomfort, and, when he complained that he was suffering from sustained numbness, he was immediately scheduled for an MRI. Upon receiving the MRI results, he was scheduled to see a neurosurgeon. The neurosurgeon recommended surgery. The surgery was promptly approved by prison medical personnel and he received the surgery nine days after his initial appointment with the neurosurgeon.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). It is clear that Brown simply disagrees with Anderson's prescribed course of treatment and fails to come forward with any evidence to the contrary. This court will not second-guess the propriety or adequacy of a particular course of treatment as it is a question of sound professional judgment. Defendant Anderson's motion for summary judgment will be granted.

**IV.   Conclusion**

11

Based on the foregoing, defendant Anderson's motion for summary judgment will be granted. The motion for summary judgment filed on behalf of nurses Poorman, Cathy, Judy, Darlene and Tammy will be deemed withdrawn.

An appropriate order follows.

**BY THE COURT:**

**s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**

Dated: March 28, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WENDELL K. BROWN,** | : | **CIVIL NO. 3:-09-CV-0933** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **KEVIN DEPARLOS, et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 28th day of March 2011, upon consideration of the motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 on behalf of defendant Anderson (Doc. 101), and nurses Poorman, Cathy, Judy, Darlene and Tammy (Doc. 104), and in accordance with the foregoing memorandum, it is hereby **ORDERED** that:

1. Defendant Anderson's motion for summary judgment (Doc. 101) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendant Anderson and against plaintiff. The Clerk of Court shall TERMINATE this defendant.

3. The motion for summary judgment (doc. 104) filed on behalf of nurses Poorman, Cathy, Judy, Darlene and Tammy is DEEMED withdrawn based on defendants' failure to file a supporting brief in accordance with Local Rule of Court 7.5, requiring a supporting brief be filed within fourteen days of the filing of a motion, and defendants' failure to properly support assertions of fact made in the statement of undisputed facts as required by Federal Rule of Civil Procedure 56 (e).

4. Defendants Poorman, Cathy, Judy, Darlene and Tammy are afforded ten days

from the date of this order to file a properly supported motion for summary judgment. Failure to do so will result in the matter proceeding to trial against these defendants.

**BY THE COURT:**


**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**